UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN M., <br>     Plaintiff, <br> v. <br> KILOLO KIJAKAZI, <br>     Defendant. | Case No. 22-cv-02692-JSC <br><br> **ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 10, 14 |

Plaintiff seeks Social Security benefits for a combination of mental impairments, including post-traumatic stress disorder (PTSD), adjustment disorder with depressed mood, and major depressive disorder. Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying her benefits claim. Before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 10, 14.[1]) For the reasons set forth below, the Court GRANTS Plaintiff's motion, DENIES Defendant's motion, and requests supplemental briefing regarding remand.

**BACKGROUND**

**I. Procedural History**

Plaintiff applied for disability insurance benefits (DIB) under Title II of the Social Security Act in December 2016. (Administrative Record ("AR") 267.) Plaintiff alleged a disability onset date of March 1, 2011 due to post-traumatic stress disorder (PTSD). (AR 69.) Her application was denied initially and upon reconsideration. (AR 68, 81.) An Administrative Law Judge (ALJ) held a hearing on May 17, 2018. (AR 48-67.) On October 12, 2018, the ALJ issued a decision denying Plaintiff's

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

application for disability benefits. (AR 32-41). The ALJ found Plaintiff was not disabled and the Appeals Council subsequently denied review making the ALJ's decision final. (AR 15.) Plaintiff then filed a request for review in this Court. *See Lauren E. M. v. Saul*, No. 19-CV-01983-JSC, (N.D. Cal.).

On November 9, 2020, the Court granted Plaintiff's motion for summary judgment, denied Defendant's cross-motion, and remanded for further proceedings. The Court found the ALJ: (1) failed to provide specific, clear and convincing reasons supported by substantial evidence for giving no weight to Plaintiff's VA disability determination, and (2) failed to offer clear and convincing reasons for rejecting the uncontradicted opinion of Dr. Dixit. *Lauren E. M. v. Saul*, No. 19-CV-01983-JSC, 2020 WL 6562323 (N.D. Cal. Nov. 9, 2020). The Court remanded to the ALJ for further proceedings consistent with its order.

On remand, the ALJ held a further telephone hearing on September 9, 2021 at which Plaintiff, medical expert Dr. Lillie McCain, and vocational expert Cheryl Chandler testified. (AR 1127-1166.) Less than a month later, the ALJ issued his decision again finding Plaintiff was not disabled. (AR 1191-1204.) The ALJ initially determined Plaintiff met the requirements for disability insurance benefits through March 31, 2016. (AR 1193.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period between her alleged onset date of March 1, 2011 through her date of last insured of March 31, 2016. (AR 1194.) At step two, the ALJ found Plaintiff had the following medically determinable impairments: adjustment disorder with depressed mood; post-traumatic stress disorder (PTSD); panic disorder; and major depressive disorder, but that she did not have a severe impairment or combination of impairments. (AR 1194.) As such, the ALJ found that she was not under a disability at any time from March 1, 2011 through March 31, 2016. (AR 1204.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1118.) Plaintiff then sought review in this Court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. (Dkt. Nos. 21, 33.)

**II. Issues for Review**

1. Whether the ALJ erred in finding Plaintiff had non-severe mental health impairments?
2. Whether the ALJ erred by failing to give sufficient weight to the Department of Veterans

1    Affairs disability determination?

2                                    **LEGAL STANDARD**

A claimant is considered "disabled" under the Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, she can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; *see* 20 C.F.R. § 404.1520(a).

                                     **DISCUSSION**

I.   **The ALJ's Finding of No Severe Mental Health Impairment**

The ALJ found Plaintiff not disabled at step two because she did not suffer a severe mental health impairment. An impairment is considered severe if it "significantly limits the claimant's physical or mental ability to do basic work activities." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th. Cir. 2020) (internal quotations and citations omitted).

The plaintiff has the burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20 C.F.R. § 404.1508 (providing that claimant must establish existence of medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques"). The Ninth

3

1  Circuit has recognized, however, that the step two inquiry is a "de minimis screening device used
2  to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th. Cir. 2001)
3  (internal quotation marks and citation omitted).  Indeed, the ALJ can find an impairment or
4  combination of impairments is non-severe "only if the evidence establishes a slight abnormality
5  that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80
6  F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citations omitted.) On review, this
7  Court's duty is to determine "whether the ALJ had substantial evidence to find that the medical
8  evidence clearly established that" Plaintiff did not have a severe mental impairment. *Webb v.*
9  *Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

10  Here, the ALJ found Plaintiff had "nonsevere mental impairments, with no more than mild
11  functional limitations" relying on the medical expert testimony of Dr. McCain at the September
12  2021 hearing "which was supported by [a] detailed explanation and which is consistent with the
13  record as a whole." (AR 1195.)  The ALJ also relied on Plaintiff's activities of daily living and
14  "the nature and extent of treatment during the period at issue." (AR 1198.)

15  **A. The ALJ's Evaluation of the Medical Evidence**

16  Plaintiff insists the ALJ erred in giving great weight to the opinion of non-examining
17  medical expert Dr. McCain and little weight to examining physician Dr. Dixit's opinion.  For
18  applications filed before March 27, 2017, such as this one,  courts must "distinguish among the
19  opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)
20  those who examine but do not treat the claimant (examining physicians); and (3) those who neither
21  examine nor treat the claimant (non-examining physicians)."[2] *Lester v. Chater*, 81 F.3d 821, 830
22  (9th Cir. 1995) (as amended (Apr. 9, 1996)).  Under the "treating physician rule," a treating
23  physician's opinion is entitled to more weight than that of an examining physician, and an
24  examining physician's opinion is entitled to more weight than that of a non-examining physician.

---

[2] For applications filed on or after March 27, 2017, the Ninth Circuit has embraced the Commissioner's new regulatory framework for evaluating medical opinions, which eliminates a hierarchy or deference to medical opinions, and instead uses factors to determine the persuasiveness of a medical opinion. *See Woods v. Kijakazi*, 32 F.4th 785, 789-792 (9th Cir. 2022); see also 20 C.F.R. §§ 404.1520c, 416.920c (2017).

4

*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide 'clear and convincing' reasons for rejecting an uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830-31.

### 1. Examining Physician Dr. Dixit

The ALJ gave "little weight" to examining physician Dr. Dixit's opinion because (1) "it was based on an examination that happened more than two years after the March 2016 date last insured, and does not support severe limitations during the relevant period"; (2) the assessed limitations were inconsistent with the evidence of daily activities; and (3) because of issues Dr. McCain had with Dr. Dixit's opinion. (AR 1201.)

First, the Court previously held the ALJ erred in "finding that Dr. Dixit's opinion does not relate back to the time period before date last insured." *Lauren E. M. v. Saul*, 2020 WL 6562323, at *5. The ALJ appears to have ignored the Court's ruling as he again relied on the fact that Dr. Dixit's opinion was based on an examination after the period of disability. It is well-settled that medical opinions "made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Thus, although Dr. Dixit's opinion was made two years after the date last insured, the ALJ needed to do more than merely point to Dr. Dixit's examination occurring after the date last insured. All medical opinions are "inevitably rendered retrospectively and should not be disregarded solely on that basis.". *Id*. at 1225-26 (collecting cases finding that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition."); *see also Lester v. Chater*, 69 F.3d 1453, 1465 n.9 (9th Cir.1995) (as amended) ("Diagnosis of a claimant's condition can properly ... occur after the onset of the impairment." (cleaned up).

Second, to the extent the ALJ relied on Plaintiff's activities of daily living, the ALJ does not identify any particular activities of daily living that conflict with Dr. Dixit's opinion. *See Trevizo*, 871 F.3d at 675-76 (finding the ALJ erred in not making specific findings regarding how an activity of daily living (childcare) was inconsistent with a physician's opinion). While the ALJ

5

elsewhere identifies Plaintiff's activities of daily living as taking care of her three young children, preparing meals, shopping in stores, driving, completing daily household chores, bike riding, going to the pool, going to church, taking care of the dogs, handling money, and going to church (AR 1198), he does not identify which of these are inconsistent with Dr. Dixit's testimony. (AR 1198.) Further, the ALJ does not address Dr. Dixit's statement that Plaintiff often has days when she does not want to engage in self-care, she can only perform household chores "with assistance," she is only able to make simple microwave meals, and she has problems with comprehension and memory. (AR 1111.) While a conflict between a medical opinion and a claimant's activities of daily living, "may justify rejecting a treating provider's opinion ... this principle has no application [where] a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities." *Ghanim*, 763 F.3d at 1162 (internal citations omitted).

        Finally, the ALJ's reliance on Dr. McCain's testimony regarding issues with Dr. Dixit's opinion are not specific and legitimate reasons supported by substantial evidence for rejecting Dr. Dixit's opinion because the ALJ did not independently determine the issues cited by Dr. McCain are supported by substantial evidence. That is, the ALJ cannot simply point to issues another medical expert has regarding another medical expert's opinion—the ALJ must independently determine these are legitimate reasons to discount the examining physician's opinion. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). For example, the ALJ notes: "Dr. McCain testified [that] Dr. Dixit did not appear to consider the claimant's marijuana use." (AR 1201.) But the ALJ does not state why this is significant or what import Plaintiff's marijuana use has on Plaintiff's claim of disability. Notably, the ALJ elsewhere concluded "[t]he claimant's substance [marijuana] use is not material to the finding of disability." (AR 1204.)

        Accordingly, the ALJ's assignment of little weight to Dr. Dixit's opinion is not supported by substantial evidence.

        **2. Non-examining Medical Expert Dr. McCain**

        The ALJ gave "great weight" to non-examining medical expert Dr. McCain's opinion "based on her professional qualification, her knowledge of the criteria for disability evaluation

6

under the Social Security Act, and her familiarity with the record as a whole." (AR 1197.) The ALJ's finding is not supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (stating the opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record").

Dr. McCain selectively relied on portions of the medical evidence which supported her finding of no severe impairment, while ignoring portions of the same record which would undermine this conclusion. For example, the ALJ relied on Dr. McCain's conclusion that Plaintiff had "mastered handling her symptoms" because she reported in 2012 that "she did not see a mental health professional or take medication." (AR 1195 citing Ex. 4F (AR 723).) However, the medical record on which the ALJ relied states in full:

> The claimant said that she has PTSD from her experiences in Iraq. "We frequently had mortars landing around us…It's hard to sleep, feel very isolated, not social where I used to be. I get nightmares of mortar attacks. I get anxiety attacks: I hyperventilate, heart races." The claimant does not see any mental health professionals, nor does she take any psychoactive medication. She said she does not want to go back to the VA because she is afraid she will be put back into an inpatient facility.

(AR 723.) Likewise, the ALJ noted Dr. McCain's reliance on "VA clinical notes at Exhibit 7F/113 indicating the PTSD symptoms were transient or mild and would affect her work only during periods of significant distress" (AR 1195); however, the cited record is from 2010—*a year prior to the alleged disability onset date*. (AR 994-1002.) The post-onset VA clinical notes in the file indicate she has panic attacks once a week and on and off suicidal thoughts. (See, e.g., AR 928 (May 30, 2012 evaluation notes).)

An ALJ errs in cherry-picking evidence that supports his conclusion—or more accurately here, relying upon an expert's cherry-picking of evidence—while ignoring medical evidence that contradicts his conclusion. *See Cotton v. Astrue*, 374 Fed. App'x. 769, 773 (9th Cir. 2010) (holding that an ALJ's "cherry-picking of [claimant's] histrionic personality out of her host of other disorders is not a convincing basis for the adverse credibility finding"); *see also Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.").

Plaintiff also insists Dr. McCain's opinion should be assigned no weight since it was

"based on an incomplete and inaccurate understanding of the complete record." (AR 10 at 15.) In particular, Plaintiff objects to Dr. McCain's failure to review the transcript of her 2018 hearing or attend Plaintiff's testimony during the 2021 hearing. However, Plaintiff does not identify any legal requirement that a medical expert consider the plaintiff's testimony in addition to the medical evidence. Under the regulations, medical opinions from those with more familiarity with claimants are entitled to greater weight. *See* 20 C.F.R. § 404.1527(c)). That is, Dr. McCain's lack of familiarity with Plaintiff might be a reason to give her opinion less weight, but the Court need not resolve this question because there are independent reasons as discussed above for finding the ALJ's reliance on Dr. McCain's opinion was not supported by substantial evidence.

### B. Gaps in Medical Treatment

The ALJ also found Plaintiff's gaps in treatment during the relevant period undermined her allegations of disabling mental impairments. (AR 1196.) Generally, "an adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (internal citations and quotation marks omitted); *see also* SSR 16-3p (stating an ALJ must consider "possible reasons" for conservative treatment and an ALJ may need to contact the claimant or raise the issue at the hearing).

Here, the ALJ considered the reasons Plaintiff advanced for her lack of treatment and found they were "borne out to some extent in the medical treatment record," but in addition to her own "personal reasons for not seeking treatment" her mental health treatment was terminated "because her case was not as severe as others." (AR 1196-97.) The ALJ concluded "the VA believed that the claimant's condition was not severe enough to continue treatment, compared to other veterans." (AR 1197.) This inference is not supported by the record.

Plaintiff testified her VA therapist told her "he could no longer see me because there's influx of patients coming back from Afghanistan." (AR 1159.) That is, it was not that Plaintiff did not have a severe impairment, but rather that the VA hospital lacked the *capacity* to treat all

8

the patients. The ALJ unreasonably inferred the VA determined Plaintiff's mental impairment was not severe, when in fact the record suggests the VA was unable to provide continued treatment because of a lack of resources. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[t]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").

Further, Plaintiff testified she did not pursue other treatment because she lacked insurance. (AR 59.) The ALJ likewise ignored this testimony and stated "there was no mention of any loss of insurance in the record that caused her to terminate VA treatment; rather it was the existence of more severe cases that caused that treatment to terminate with the VA." (AR 1197.) This statement ignores Plaintiff's testimony:

> A. They said there's a[n] influx of patients coming back. And he could no longer see me anymore. I'd just gotten released from the psych ward. And I wanted to see a psychologist. I, I did want to be put on mediation. And I wanted to be in counseling,
> Q. So, they couldn't see you anymore because of the number of –
> A. Yes.
> Q. – incoming patients? Why not go to someone else besides –
> A. I didn't have insurance. I didn't have insurance at the time.
> Q. Okay.

(AR. 59-60.) The ALJ did not address Plaintiff's testimony. The ALJ cannot simply ignore contrary evidence. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion); *Diedrich v. Berryhill*, 874 F.3d 634, 642-43 (9th Cir. 2017) (ALJ erred by relying on evidence indicating an ability to function while "ignoring competent evidence in the record that suggests an opposite result."). To the extent the ALJ implicitly found Plaintiff's testimony not credible, implicit credibility findings are not permitted. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). Rather, "courts have consistently required that there be an explicit finding whether the Secretary believed or disbelieved the claimant whenever the claimant's credibility is a critical factor in the Secretary's decision." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

Accordingly, substantial evidence does not support the ALJ's finding that Plaintiff's gaps

in treatment undermined her allegations of disabling mental impairments.

### C. Activities of Daily Living

The Commissioner insists the ALJ's decision should be upheld for the independent reason Plaintiff does not challenge the ALJ's finding that Plaintiff's activities of daily living were not consistent with her allegations of disabling functional limitations. (Dkt. No. 14 at 11.) Although Plaintiff does not address the ALJ's finding in this regard, the findings regarding Plaintiff's activities of daily living standing alone would be insufficient to support the ALJ's non-disability finding here given the Court's findings regarding the other errors in the ALJ's step two determination. The ALJ's step two determination must be based on consideration of "all relevant evidence" including "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c)(1). As such, the Court cannot affirm the ALJ's Step Two determination only on the activities of daily living finding.

*** 

The ALJ can find an impairment or combination of impairments is non-severe "only if the evidence establishes a slight abnormality than has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290 (internal quotation marks and citations omitted.) Substantial evidence does not support the ALJ's finding that Plaintiff's mental impairments were non-severe.

## II.     The VA's Disability Determination

Plaintiff contends the ALJ failed to give sufficient weight to the VA determination she was 100 percent totally and permanently disabled. When assessing disability, an ALJ must consider any VA determinations and ordinarily must assign such determinations great weight. *Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018). An ALJ may only give less than great weight to a VA determination if the ALJ gives "persuasive, specific, [and] valid reasons for doing so that are supported by the record." *Id*. at 876–77.

Here, the ALJ gave "no more than partial weight" to the VA disability finding because (1) it

was based on "symptoms [] not reflected in the treatment record for the period at issue"; (2) the VA disability rating had no effect on Dr. McCain's opinion that claimant had non-severe impairments; (3) the VA finding was "inconsistent with the evidence of daily activities and abilities"; (4) "a statement that claimant has total occupational and social impairment is not a function by function analysis"; and (5) "just because an impairment is listed as a service-connected impairment doesn't mean it affects work." (AR 1199-1200.)

The latter two reasons advanced by the ALJ were improper. Given "the marked similarity between the disability programs of the VA and of the SSA[, i]nsofar as the ALJ distinguished the VA's disability rating on the general ground that the VA and SSA disability inquiries are different, her analysis fell afoul of [prior precedent]." *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009) (cleaned up) (rejecting similar reasoning for discounting a VA finding of 100 percent disability). While the VA disability finding is not a function by function analysis, "both programs focus on analyzing a claimant's functional limitations" and "[t]he VA criteria for evaluating disability [is] very specific and translate[s] easily into SSA's disability framework." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). The differences between the two programs cannot be the basis for rejecting the VA determination, as those differences exist in every case. The ALJ must explain why these differences are material in *this* case.

The Court thus turns to the ALJ's other bases for discounting the VA's finding; namely, it was not supported by the treatment record, it was not a factor in Dr. McCain's non-severity finding, and it was inconsistent with Plaintiff's activities of daily living. First, the ALJ found the treatment record for the period at issue here (December 28, 2012-March 31, 2016) did not reflect the symptoms identified in the VA finding; namely, occupational and social impairment, persistent delusions, a GAF of 40, suicidal ideation, anxiety, chronic sleep impairment, depressed mood, mild memory loss, and weekly panic attacks. (AR 1199 (citing Ex. 2E, AR 304).) This is simply another way of saying the gaps in Plaintiff's treatment record do not support her claim of disability. However, as noted above, Plaintiff testified she was told in 2012 she could no longer be seen by the VA because of an influx in patients and she lacked private insurance. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for

11

lack of funds.").

Second, it is unclear why the fact that the "VA disability rating had no effect on Dr. McCain's opinion that claimant had non-severe impairments" is a basis for giving little weight to the VA's disability finding. To the extent the ALJ is stating he found Dr. McCain's non-severity finding more persuasive, this is not a valid reason given the Court's conclusion that the ALJ's assignment of great weight to Dr. McCain's opinion was not supported by substantial evidence.

Finally, the ALJ's finding that "the VA disability rating is inconsistent with the evidence of daily activities and abilities as described above" is not supported by substantial evidence. (AR 1199.) The ALJ must explain why Plaintiff's activities of daily living—namely, caring for her young children—is inconsistent with the VA's disability finding. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Plaintiff's disability finding was based on her PTSD and anxiety. (AR 304.) While she testified she was able to wake her children up in the morning, feed them breakfast, pack their lunches, and help them with their homework, she also testified she has difficulty focusing on tasks for an extended period of time, she gets "really agitated" in stressful environments, and has anxiety attacks when around strangers. (AR 55-57.) The issue is not whether Plaintiff is able to perform the physical demands of work or daily living activities; rather, the question is whether Plaintiff's mental impairments impact her ability to perform and sustain work. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Plaintiff's difficulty focusing, stress-based agitation, and anxiety attacks are all consistent with her PTSD diagnosis. As such, substantial evidence does not support the ALJ's conclusion that her ability to care for her children notwithstanding these issues is inconsistent with an inability to function in a workplace environment.

In sum, the ALJ failed to provide persuasive, specific, and valid reasons for discounting the VA finding of 100 percent total and permanent disability.

\*\*\*

The ALJ's step two determination is "a de minimis screening device used to dispose of groundless claims." *Edlund*, 253 F.3d at 1158 (cleaned up). On review, the Court's duty is to

1  determine whether substantial evidence supports the ALJ's finding that Plaintiff had no more than
2  a slight abnormality that has no more than a minimal effect on her ability to work. *Webb*, 433
3  F.3d at 886. As discussed above, substantial evidence does not support the ALJ's finding that
4  Plaintiff's PTSD was not severe given (1) the errors in weighing the medical evidence; (2) the
5  unsupported and unreasonable inferences the ALJ drew regarding gaps in Plaintiff's treatment;
6  and (3) the ALJ's lack of valid reasons for refusing to give great weight to the VA's finding of 100
7  percent total and permanent disability.

**III.    Remand**

In her motion for summary judgment, Plaintiff asked the Court to remand "because further proceedings are necessary to accurately determine [Plaintiff's] entitlement to benefits pursuant to Title II." (Dkt. No. 10 at 17.) In her reply, Plaintiff requests remand for an award of benefits and/or further proceedings. (Dkt. No. 17 at 9.) Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (discussing the "credit-as-true" rule).

Here, while the ALJ failed to provide legally sufficient reasons for rejecting the same evidence as at issue in Plaintiff's prior appeal, it is unclear whether the credit-as-true rule is applicable given the ALJ's analysis ended at step two. Neither party addresses this issue; however, the credit-as-true rule seems particularly appropriate where, as here, the ALJ simply ignored the Court's Order on remand. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") Accordingly, the Court orders Plaintiff to file a supplemental brief on or before March 3, 2023 addressing whether the credit-as-true rule applies under these circumstances. The Commissioner may file a responsive brief by March 17, 2023.

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED and Defendant's cross-motion is DENIED. The Court will issue a further order regarding the scope of remand following completion of the supplemental briefing.

This Order disposes of Docket Nos. 10, 14.

**IT IS SO ORDERED.**

Dated: February 14, 2023

JACQUELINE SCOTT CORLEY
United States District Judge